J-S33022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES K. JOHNSON | : | |
| | : | |
| Appellant | : | No. 3332 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 4, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007865-2019

BEFORE: BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.: **FILED DECEMBER 23, 2025**

Appellant Charles K. Johnson appeals *nunc pro tunc* from the judgment of sentence imposed after he entered a guilty plea to one count each of third-degree murder, possessing an instrument of crime (PIC), and recklessly endangering another person (REAP).[1] On appeal, Appellant argues that the trial court abused its discretion when it denied his post-sentence motion to withdraw his guilty plea. After review, we affirm.

In its opinion, the trial court set forth the facts presented at Appellant's guilty plea hearing:

The facts to which [Appellant] pled guilty were recited at the plea:

[Assistant District Attorney Lederer]: Your Honor, on Sunday, August 11th, 2019, at approximately 3:30 p.m., medics arrived to 3927 Pine Street in the city and county of [Philadelphia after Appellant] called the police for a report

_____

[1] 18 Pa.C.S. §§ 2502(c), 907, and 2705, respectively.

of an overdose. When medics arrived, they discovered that was not the case as they found the decedent in this case, Ms. Brownell, suffering from extensive injuries to her face.

Medics discovered she had an abrasion under her right eye and a laceration under her lip. She was also lying naked on a bed unresponsive with a towel over her. Medics brought her to the hospital where she went -- underwent significant surgeries to attempt to resuscitate her.

At that point in time, she was suffering from significant internal injuries. Doctors attempted numerous times to stop the internal bleeding including removing portions of her spleen and colon to stop the internal damage. However, all of the attempts to stop the internal bleeding and the trauma were lost when she went into a final cardiac arrest and was pronounced dead on August 11th, 2019, due to the significant injuries that the decedent had incurred.

And [Appellant's] story is that [Ms. Brownell] had come home drunk and fell. Due to the fact that this did not add up, they brought [Appellant] down to Homicide for questioning. [Appellant] said that the decedent in this case had come home drunk and slipped and fell. He kept denying the fact that he had ever laid hands on [Ms. Brownell,] his paramour of five years.

Then once the homicide detectives were given a final diagnosis from the doctors that a slip and fall would not cause the significant external and internal trauma to her body, at that point in time, [Appellant] told the police that he simply slapped [Ms. Brownell] and hit her with a shoe. Again, [Appellant] was confronted with the extent of the injuries and told there was no way that a simple slap and a shoe would be able to cause the significant trauma that [Ms. Brownell] suffered. At that point in time, [Appellant] said that he simply kicked her when her head was on the ground.

The medical examiners did determine that Ms. Brownell did die and the manner of death was homicide. Immediate cause of death was blunt impact injuries. The extent of the injuries to the face, there was a laceration on the inner surface of the lower lip; a maxilla fracture to the sinus wall; a left zygomatic arch fracture; a committed [sic] fracture; and fractures to the orbital socket walls.

To the torso, there was a left kidney laceration, a hematoma, status post-left nephrectomy, a status post-splenectomy, duodenal hematoma, mesenteric hemorrhages.

There were also complications due to the blunt impact injuries, which caused an anoxic brain injury and hemorrhages. The brain went into a hemorrhaging shock. All of those injuries are outlined in the medical examiner's report.

[Appellant] had also indicated that [Ms. Brownell] had come home intoxicated and was on the porch. At one point, [Appellant dragged] her inside and left her alone. Detectives recovered video from the block that showed Ms. Brownell returning home staggering. However, it did not add up to [Appellant's] story that [Ms. Brownell] was laying out on the porch and he dragged her in. All of these injuries contradicted all of the versions of events that [Appellant] told the detective.

Family also reported to police and to medical examiner's report that there had been a history of violence between [Appellant and Ms. Brownell] that culminated in her death on August 11th, 2019 into the early morning hours of August 12th, 2019.

The Commonwealth would collectively mark and move all relevant police paperwork including the medical examiner's report, all interviews from police and civilians, all other evidence including the crime scene photos as well as the video.

With that, the Commonwealth would rest.

THE COURT: Thank you. Sir, are those the facts to which you are pleading guilty?

[Appellant]: Yes.

(Counsel and client conferred.)

THE CRIER: May I, Your Honor?

THE COURT: Please.

[Appellant's Counsel]: Judge, before you do -- hold on one minute.

(Counsel confer off the record.)

[Assistant District Attorney Lederer]: Your Honor, [Appellant] is pleading guilty to third-degree murder [and PIC]. However, I'm also amending to add [REAP]. That is on the plea form.

THE COURT: Okay.

THE CRIER: May I, Your Honor?

THE COURT: Yes.

THE CRIER: [Appellant], on Docket Number CP-51-CR0007865-2019, you are being charged with murder of the third-degree. How do you plead?

[Appellant]: Guilty.

THE CRIER: [Appellant], to same docket number, you are being charged with [PIC]. How do you plead?

[Appellant]: I plead guilty.

THE CRIER: [Appellant], to the same docket number, you are being charged with [REAP]. How do you plead?

[Appellant]: Guilty.

THE CRIER: Your Honor, [Appellant] has pled guilty before the court and signed the necessary paperwork.

THE COURT: All right.

Trial Ct. Op., 5/27/25, at 2-5 (quoting N.T., Guilty Plea Hr'g, 6/2/21, at 7-12) (some formatting altered).

On October 4, 2021, the trial court sentenced Appellant to a term of twenty to forty years of incarceration for third-degree murder, two years of probation for PIC, and two years of probation for REAP. *See* N.T. Sentencing, 10/4/21, at 36. The trial court ordered the sentences of probation to be

- 4 -

served concurrently to each other. *See id.* This resulted in an aggregate sentence of twenty to forty years of incarceration followed by two years of probation. *See id.*; Sentencing Order, 10/4/21. On October 13, 2021, Appellant filed a post-sentence motion to withdraw his guilty plea asserting his innocence, which the trial court denied. Appellant did not file a direct appeal.

On February 16, 2022, Appellant filed a timely Post Conviction Relief Act[2] (PCRA) petition. The PCRA court subsequently appointed counsel who filed an amended PCRA petition requesting the reinstatement of Appellant's direct appeal rights *nunc pro tunc*. On November 15, 2024, the PCRA court granted Appellant's petition, and Appellant filed a counseled notice of appeal on November 12, 2024.[3] Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

1. Whether the trial court erred when it accepted [Appellant's] guilty plea to the criminal offense of murder — third degree, as the facts placed on the record by the Assistant District Attorney do not form a sufficient factual basis for this criminal offense?

2. Whether the trial court erred when it denied [Appellant's] motion to withdraw guilty plea, as [Appellant] is innocent of the criminal offense of murder—third degree and withdrawal of his guilty plea was necessary to correct manifest injustice?

_____

[2] 42 Pa.C.S. §§ 9541-9546.

[3] We note that Appellant also filed a *pro se* notice of appeal at Superior Court docket number 3252 EDA 2024. This Court dismissed Appellant's *pro se* appeal as duplicative of the instant appeal. *See* Order, 6/18/25.

Appellant's Brief at 4 (formatting altered).

Appellant first argues that the trial court erred when it accepted his guilty plea because the Commonwealth's statement of the facts did not form a sufficient factual basis for the crime of third-degree murder. **See** Appellant's Brief at 16. Appellant contends that the facts of this case are more consistent with voluntary manslaughter and that his trial counsel should have negotiated an open guilty plea to voluntary manslaughter. **See id.** at 22-23.

Initially, we must determine whether Appellant has preserved this claim on appeal. Pennsylvania Rule of Criminal Procedure 720 requires that a defendant file a post-sentence motion within ten days of sentencing. Pa.R.Crim.P. 720(A)(1). Further, "all requests for relief from the trial court shall be stated with specificity and particularity, and shall be consolidated in the post-sentence motion." Pa.R.Crim.P. 720(B)(1)(a). The failure to raise an objection that allows the trial court to correct an error at the first opportunity results in waiver. **See Commonwealth v. Monjaras-Amaya**, 163 A.3d 466, 469 (Pa. Super. 2017) (concluding that the appellant waived a challenge to his guilty plea when he raised his claim for the first time in a Rule 1925(b) statement).

Here, Appellant filed a timely post-sentence motion seeking to withdraw his guilty plea. **See** Post-Sentence Motion, 10/13/21. However, in the post-sentence motion, Appellant sought to withdraw his guilty plea on the basis that he was innocent of the charges against him. **See id.** Appellant did not claim that the trial court erred or abused its discretion in accepting the plea

because there was an insufficient factual basis for the guilty plea. *See id.* Therefore, because Appellant failed to preserve his instant challenge to the factual basis of his plea in his post-sentence motion, Appellant's first issue is waived. *See Monjaras-Amaya*, 163 A.3d at 469; Pa.R.Crim.P. 720(B)(1)(a).

In any event, even if Appellant had not waived this claim, we would conclude that Appellant was not entitled to relief. Although not constitutionally mandated, a proper plea colloquy ensures that a defendant's plea is truly knowing and voluntary. *Commonwealth v. Maddox*, 300 A.2d 503, 504 (Pa. 1973). "A valid plea colloquy must delve into six areas: 1) the nature of the charges, 2) the factual basis of the plea, 3) the right to a jury trial, 4) the presumption of innocence, 5) the sentencing ranges, and 6) the plea court's power to deviate from any recommended sentence." *Commonwealth v. Reid*, 117 A.3d 777, 782 (Pa. Super. 2015) (citations and quotation marks omitted); *see also* Pa.R.Crim.P. 590 cmt. (setting forth a non-exhaustive list of questions a trial judge should ask before accepting a plea).

Further, nothing in Rule 590 "precludes the supplementation of the oral colloquy by a written colloquy that is read, completed, and signed by the defendant and made a part of the plea proceedings." *Commonwealth v. Bedell*, 954 A.2d 1209, 1212-13 (Pa. Super. 2008) (citation omitted). "In determining whether a guilty plea was entered knowingly and voluntarily, a court is free to consider the totality of the circumstances surrounding the plea." *Id.* at 1212 (citation omitted and formatting altered). Further, a

"defendant is bound by statements he makes during plea colloquy, and may not assert grounds for withdrawing plea that contradict statements made when he pleaded guilty." **Reid**, 117 A.3d at 783 (citation omitted).

Third-degree murder is defined as:

[A]ny killing with malice that is not first or second-degree murder. **See** 18 Pa.C.S. § 2502(c). Decisional precedent further establishes that third-degree murder requires no specific intent to kill. Rather, the *mens rea* for third-degree murder is malice, the definition of which is well settled:

Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

**Commonwealth v. Levin**, 816 A.2d 1151, 1152–53 (Pa. Super. 2003) (some formatting altered and citations omitted).

Here, the Commonwealth provided a recitation of the facts underlying this case and Appellant agreed that those facts were accurate. **See** N.T., Guilty Plea Hr'g, 6/2/21, at 7-12. Specifically, the facts reflected that Appellant physically assaulted Ms. Brownell with such force that he lacerated Ms. Brownell's lower lip, caused multiple fractures, a left kidney laceration, a duodenal hematoma, mesenteric hemorrhages, an anoxic brain injury and hemorrhages, and caused her brain to go into a hemorrhaging shock. **See id.** at 9-10. The facts also established malice, as Appellant's attack and evidence of prior violence toward Ms. Brownell supported the conclusion that Appellant consciously disregarded an unjustified and extremely high risk that his actions

- 8 -

might, and in fact did, cause serious bodily injury resulting in Ms. Brownell's death. *See Levin*, 816 A.2d at 1152–53; *see also Commonwealth v. Golphin*, 161 A.3d 1009, 1020 (Pa. Super. 2017) (finding that the evidence was sufficient to establish third-degree murder where the defendant's repeated abuse resulted in the victim's death); *Commonwealth v. McHale*, 858 A.2d 1209, 1214 (Pa. Super. 2004) (stating that "when such a considerable risk of injury or death has been created and then callously disregarded, the actor demonstrates that he essentially cares not whether he maims or kills another," and when the actor "consciously creates such a high likelihood that injury or death will ensue, or continues his actions after realizing he has created such a risk, he exhibits the wickedness of disposition, hardness of heart and cruelty that is the hallmark of malice." (some formatting altered)); *Commonwealth v. Martin*, 640 A.2d 921, 925 (Pa. Super. 1994) (explaining that repeated, merciless abuse was "serious" and clearly established the requisite malice for third degree murder).

On this record, we conclude that that the facts presented by the Commonwealth, and to which Appellant agreed,[4] established a sufficient

---

[4] *See* N.T., Guilty Plea Hr'g, 6/2/21, at 7-12 (setting forth, among other things, the factual basis of the crime of third-degree murder and Appellant's agreement to the factual basis and agreement to plead guilty); Written Guilty Plea Colloquy, 6/2/21, at 1-4 (explaining that there were no threats or promises made to induce Appellant's plea; the right to trial; Appellant's limited appeal rights; the facts of the case and the elements of the crimes were explained and acknowledgement that "I committed the crimes(s), and that is why I am pleading guilty;" acknowledgement that Appellant is "giving up
*(Footnote Continued Next Page)*

factual basis for the elements of the crime of third-degree murder. Therefore, even if Appellant properly preserved this issue for appeal, we would discern no error or abuse of discretion by the trial court in accepting Appellant's guilty plea. **See Reid**, 117 A.3d at 782; Pa.R.Crim.P. 590 cmt.; **Levin**, 816 A.2d at 1152–53. Accordingly, had we not already concluded that the claim was waived, we would conclude that Appellant is not entitled to relief.[5]

_____

defenses" and that by pleading guilty "I am giving up the right to defend my case. I cannot come back to court later and say that I was not guilty. Once I plead guilty, I can no longer complain that I was innocent and did not commit the crime."); Colloquy for Plea of Guilty Form, 6/2/21, at 1 (acknowledging that Appellant understood the nature of the charges to which he plead guilty and acknowledging that there is a factual basis for the plea; additionally acknowledging the right to a trial by jury, being presumed innocent until proven guilty, the permissible range of sentences, and that the trial court is not bound by the terms of any plea agreement unless the judge accepts such agreement).

[5] Appellant's underlying claim alleges that the trial court erred in accepting his guilty plea because there was an insufficient factual basis is waived. To the extent that Appellant now attempts to challenge the sufficiency of the evidence, we conclude that he waived that issue when he entered his guilty plea. **See Commonwealth v. Rounsley**, 717 A.2d 537, 539 (Pa. Super. 1998) (stating that "[i]t is well established that any issue relating to sufficiency of the evidence is waived by entry of a guilty plea"). Accordingly, Appellant's claim that the evidence was insufficient to support a charge for third-degree murder is waived. **See id.** Further, Appellant's contentions that the facts of this case are more consistent with voluntary manslaughter and that Appellant's trial counsel "should have" negotiated an open guilty plea to voluntary manslaughter, **see** Appellant's Brief at 22-23, implicate issues concerning the effectiveness of counsel and are not properly raised on direct appeal absent certain exception not applicable here. **See Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013) (explaining that our Supreme Court has held that as a general rule, claims of ineffective assistance of counsel must await collateral review under the PCRA); **see also Commonwealth v. Delgros**, 183 A.3d 352, 360-61 (Pa. 2018) (stating the three exceptions to the general rule).

In his second issue, Appellant argues that the trial court abused its discretion when it denied his post-sentence motion to withdraw his guilty plea. *See* Appellant's Brief at 23. Appellant contends that he is innocent of third-degree murder and allowing Appellant to withdraw his guilty plea is necessary to correct manifest injustice.[6] *See id.* at 23-24.[7]

We review the denial of a post-sentence motion to withdraw a guilty plea for an abuse of discretion. *Commonwealth v. Gabra*, 336 A.3d 1052, 1056 (Pa. Super. 2025). This Court has explained:

> Although no absolute right to withdraw a guilty plea exists in Pennsylvania, the standard applied differs depending on whether the defendant seeks to withdraw the plea before or after sentencing. When a defendant seeks to withdraw a plea after sentencing, he must demonstrate prejudice on the order of manifest injustice. [A] defendant may withdraw his guilty plea after sentencing only where necessary to correct manifest injustice. Thus, post-sentence motions for withdrawal are subject to higher scrutiny since the courts strive to discourage the entry of guilty pleas as sentence-testing devices.
>
> Manifest injustice occurs when the plea is not tendered knowingly, intelligently, voluntarily, and understandingly. In determining

---

[6] Appellant raised his innocence as a basis to withdraw his guilty after sentencing in his post-sentence motion. *See* Post-Sentence Motion, 10/13/21. Accordingly, we conclude that Appellant preserved this claim for appellate review. *See*, *e.g.*, *Monjaras-Amaya*, 163 A.3d at 469; Pa.R.Crim.P. 720(B)(1)(a).

[7] To the extent that Appellant again purports to raise the claim that Appellant's trial counsel "should have" negotiated an open guilty plea for voluntary manslaughter, *see* Appellant's Brief at 24, we reiterate that claims concerning what trial counsel "should have" done implicate issues concerning the effectiveness of counsel and are not properly raised on direct appeal absent certain exception not applicable here. *See Holmes*, 79 A.3d at 576; *Delgros*, 183 A.3d at 360-61.

whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise.

**Commonwealth v. Hart**, 174 A.3d 660, 664-65 (Pa. Super. 2017) (citations and footnote omitted and formatting altered). "A defendant's post-sentence recantation of guilt does not rise to the level of prejudice on the order of manifest injustice sufficient to require that he be permitted to withdraw his plea of guilty." **Commonwealth v. Myers**, 642 A.2d 1103, 1108 (Pa. Super. 1994). Further, we have explained that "the law does not require that the defendant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that his decision to plead guilty be knowingly, voluntarily and intelligently made." **Reid**, 117 A.3d at 783 (citations omitted and formatting altered).

Here, the trial court reiterated that:

A defendant's post-sentence recantation of guilt does not rise to the level of prejudice on the order of manifest injustice sufficient to require that he be permitted to withdraw his plea of guilty. [Appellant's] statements in both his testimony and his written colloquy are binding . . ., and he has failed to establish any basis for withdrawing his guilty plea.

Trial Ct. Op., 5/27/25, at 10 (some formatting altered and citations omitted).

On this record, we discern no abuse of discretion by the trial court in denying Appellant's post-sentence motion to withdraw his guilty plea. **See Gabra**, 336 A.3d at 1056. As noted, Appellant completed both an oral and written plea colloquy at the time he entered the guilty plea. **See** N.T., Guilty

Plea Hr'g, 6/2/21, at 7-12; Written Guilty Plea Colloquy, 6/2/21, at 1-4; Colloquy for Plea of Guilty Form, 6/2/21, at 1. The colloquies covered the six areas set forth in *Reid*, including the nature of the charges, the factual basis of the plea, the right to a jury trial, the presumption of innocence, the sentencing ranges, and the court's power to deviate from any recommended sentence. *See* N.T., Guilty Plea Hr'g, 6/2/21, at 7-12; Written Guilty Plea Colloquy, 6/2/21, at 1-4; Colloquy for Plea of Guilty Form, 6/2/21, at 1; *see also Reid*, 117 A.3d at 782; Pa.R.Crim.P. 590 cmt. Further, Appellant stated at the hearing that he was not under the influence of any drugs or alcohol, that no one had coerced him into entering a guilty plea, and that he was satisfied with the representation by his counsel. *See* N.T., Guilty Plea Hr'g, 6/2/21, at 4, 6-12. Thereafter, Appellant voluntarily entered guilty pleas to the crimes charged. *See id.* at 11-12. Appellant is bound by his statements at the plea hearing and in the written colloquy, which demonstrate that his plea was knowing, voluntary, and intelligent. *See Reid*, 117 A.3d at 783; *see also* Pa.R.Crim.P. 590 cmt.

We agree with the trial court that Appellant has not demonstrated a manifest injustice necessitating the withdrawal of his guilty plea, and we discern no abuse of discretion in the trial court's decision to deny Appellant's post-sentence motion to withdraw his guilty plea. *See Gabra*, 336 A.3d at 1056; *Hart*, 174 A.3d at 664-65; *Reid*, 117 A.3d at 783. Therefore, Appellant is not entitled to relief, and we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2025